2025 IL App (1st) 240851-U

THIRD DIVISION
August 13, 2025

No. 1-24-0851

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF ADEOLA OLUSANYA, | ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 2015 D 005696 |
| | ) | |
| ROTIMI OLUSANYA, | ) | |
| | ) | Honorable Diana Rosario, |
| Respondent-Appellee. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    ***Held:***    Appellant failed to include a report of proceedings or acceptable substitute to support her claims of error regarding (1) the trial court's denial of her petition for a rule to show cause and her emergency motion to continue and (2) the trial court's grant of appellee's motion for sanctions or, alternatively, attorney fees. Therefore, this court must presume the trial court's order was in conformity with the law and supported by a sufficient factual basis. Affirmed.

¶ 2    Petitioner Adeola Olusanya (Adeola) filed a petition for the dissolution of her marriage with respondent Rotimi Olusanya (Rotimi), which the trial court granted. Adeola subsequently filed a petition for rule to show cause and an emergency motion to continue a hearing, and Rotimi filed a motion for sanctions or alternatively, a petition for attorney fees. Following a hearing, the

court denied Adeola's petition and motion, and it granted Rotimi's motion for sanctions/petition for attorney fees. Adeola now appeals *pro se* from the trial court's orders. We affirm.

¶ 3                                    BACKGROUND

¶ 4        Adeola and Rotimi were married in December 2007. On September 2, 2015, Adeola filed her petition for dissolution of marriage. Adeola stated in her petition that the parties had one child, T.O., who was born in September 2010. On December 28, 2018, the trial court entered a judgment for dissolution of marriage. Among other directives, Rotimi was ordered to pay Adeola $6,405.17 in monthly maintenance, $597 in monthly child support for the benefit of T.O., and two $75,000 cash payments. The order further provided that the parties would equally share significant decision-making responsibilities regarding T.O., referring to an "Allocation Judgment" also entered on December 28, 2018.

¶ 5        On February 2, 2022, Adeola filed a *pro se* emergency petition for an order of protection. Adeola alleged in her emergency petition that Rotimi had returned from Nigeria on February 1, 2022, but he refused to "comply with the CDC guidelines that requires [*sic*] him to quarantine," take a Covid-19 test following his return, and provide any document pertaining to his vaccination status. Adeola further alleged that Rotimi called her and the CDC "stupid" and "threatened to pick my son up from school today, putting my son [and] others at health risk." Adeola further alleged that, in violation of the dissolution order, Rotimi came to her residence on January 6, 2022. She said that she "did not know he had parked in front of my house for about 30 [minutes]" and was shouting on the street. According to her, Rotimi wanted to pick up their son "after he [presumably Rotimi] confirmed he was sick with Covid symptoms." Finally, Adeola recounted that she had obtained a prior emergency order of protection on April 2, 2015, alleging he verbally abused her in front of their son. She stated, however, that she "agreed to vacate" this order due to "durress [*sic*] from the church" and Rotimi's threats. The trial court granted this petition and subsequently

extended the hearing date to March 15, 2022, upon Adeola's request for a continuance. The court vacated this order following the hearing on March 15, 2022.

¶ 6 On March 14, 2022, Adeola filed a *pro se* petition for a rule to show cause against Rotimi. Adeola's petition comprised six counts and spanned over 70 pages. Counts I and II alleged that Rotimi failed to pay child support and to make a remaining $25,000 divorce settlement payment to her. Counts III through VI made the following allegations: Rotimi failed to enroll their minor child in certain extracurricular activities, including piano lessons and soccer (count III); failed to fully exercise the parenting time awarded to him (count IV); failed to open and fund a college savings account for their minor child (count V); and parked in front of Adeola's house for approximately 30 minutes and was "shouting [in] the street" (count VI). Rotimi subsequently filed a motion to strike and dismiss counts III through VI, arguing in part that the dissolution judgment and allocation judgment do not require Rotimi to do (or refrain from doing) the acts alleged in those counts. Rotimi further argued that Adeola's petition (seeking indirect civil contempt against him) did not contain a "purge provision."

¶ 7 On July 29, 2022, Adeola filed a petition for an emergency order of protection. Adeola alleged that, at around 5:30 a.m. on that same day, Rotimi attempted to take her son out of state in violation of their allocation judgment. Adeola further alleged that Rotimi had been verbally and emotionally abusing their minor son after being prevented from traveling out of state with their son. The trial court granted the petition and on August 17, 2022, it extended its order to September 8, 2022. The court further allowed Adeola to supplement her petition on or before September 6, 2022. On September 8, 2022, the trial court vacated this order.

¶ 8 On September 20, 2022, Adeola filed another petition for an emergency order of protection, alleging that (1) Rotimi appeared outside of her residence (contrary to the "Divorce Decree"), (2) Rotimi had been "harassing [her] with phone calls and text messages" and had deprived their

son of the son's possessions.  In addition, Adeola alleged that, on September 15, 2022, the principal of their son's school called informing her that their son refused to go home with Rotimi.

¶ 9     On September 29, 2022, Adeola filed a motion for substitution of judge for cause, claiming among other things that the trial judge was biased against her because the judge denied the admission of "audio evidence of child abuse allegations made by the minor child."  Adeola further alleged that the judge's bias was shown when the judge allowed opposing counsel "to attack my credibility" by stating that Adeola believed in " 'voodoo.' "  The hearing on this motion was transferred to another trial judge, who denied this motion on November 21, 2022.

¶ 10    On January 26, 2023, Adeola filed an emergency motion seeking leave to travel with her son to Nigeria to attend a funeral.  Adeola alleged that Rotimi refused to provide written consent for the trip and their son's passport renewal.  On January 27, 2023, the trial court issued an order stating that Adeola's motion was not deemed an emergency and set the matter for a hearing via Zoom on February 2, 2023.  On February 1, 2023, Adeola amended her motion, which in substance made further allegations of abuse against Rotimi.  On February 2, 2023, following a hearing, the trial court entered an agreed order providing in relevant part that Adeola would provide Rotimi with a "complete itinerary of the minor child's travel including, but not limited to, flight information and lodging/accommodation information (*e.g.*, address, telephone numbers, etc.) no later than 5:00 p.m. on February 2, 2023."  The order further provided that if she failed to provide Rotimi with the itinerary by that time, it would result in the "automatic revocation" of Rotimi's consent for their child to travel, and the child would not then be permitted to travel to Nigeria.

¶ 11    On March 19, 2023, Rotimi filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)) or alternatively, a petition for attorney fees pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(b) (West 2022)).  Rotimi argued that he needlessly incurred attorney fees defending against

Adeola's "baseless and ruthless allegations and motions," including various petitions for rule to show cause and petitions for order of protection. Rotimi further alleged that, regarding Adeola's emergency motion for leave to travel to Nigeria with their son, he had agreed that the child could travel with Adeola, but she "refused to provide itinerary information and/or discuss details of this trip with Rotimi or his attorney." Rotimi added, "Instead of engaging in settlement negotiations, Adeola insisted that the issue be brought before this Honorable Court, ***."

¶ 12    On December 14, 2023, following a hearing, the trial court issued an order denying Adeola's petition for an order of protection against Rotimi, which she had filed on September 20, 2022. The court noted that it had denied her emergency petition on the same date that she had filed the petition (September 20, 2022), but that it had continued the matter for a hearing on the entry of a plenary order. The court found that Rotimi's testimony was credible and reliable, and that "no abuse or harassment as defined by the Illinois Domestic Violence Act has occurred." The court then granted Rotimi's motion to strike and dismiss counts III, IV, V, and VI of Adeola's Petition for Rule to Show Cause (filed on March 14, 2022). Finally, the court continued the matter for a hearing on March 18, 2024, regarding counts I and II of Adeola's March 2022 petition and Rotimi's March 2023 motion for sanctions or, in the alternative, attorney fees.

¶ 13    On March 15, 2024, Adeola filed a *pro se* motion to continue the hearing date. Adeola stated in her motion that she needed a continuance for medical reasons, namely, "post operation appointments" taking place on March 15-19, 2024, as a result of complications from surgeries she had undergone the prior January and February. She further stated that there was "additional evidence" that would not be available at the time of the hearing, specifically, testimony from Chicago police officer Rivera at "Midway Airport" and "recent threat sms (s) [*sic*]" that would purportedly show Rotimi's "domestic violence abuse" against Adeola and their son.

¶ 14    On March 18, 2024, the trial court issued a written order on Adeola's petition for a rule to show cause and her emergency motion to continue the proceedings, as well as Rotimi's motion for sanctions, or in the alternative, attorney fees.  The order stated that the cause came before the court for a hearing "via Zoom" on that same day and that the court heard argument from both parties. The order noted that Adeola appeared *pro se* and "appeared briefly via Zoom before leaving the virtual courtroom."  After denying Adeola's motion to continue, the court stated in its order that Adeola "was giv[en] the opportunity to proceed to hearing on her Petition for Rule," but she stated that "she was not prepared [to] do so."  The order further stated that, after the court denied her petition for want of prosecution, the court proceeded to a hearing on Rotimi's "petition for fees," at which point "Adeola logged off the Zoom in the middle of the hearing and did not return."  The court indicated that the hearing nonetheless continued in Adeola's absence.

¶ 15    Regarding Rotimi's petition for fees, the court found that Adeola's conduct during the proceedings "has caused unnecessary litigation and needless expenses" in violation of Supreme Court Rule 137 and section 508(b) of the Act.  The court then granted Rotimi's petition for fees and entered judgment in his favor and against Adeola in the sum of $32,000.  Adeola timely filed her *pro se* notice of appeal from the court's order dated March 18, 2024.

¶ 16                                          ANALYSIS

¶ 17    Rotimi has not filed an appearance in this court, nor has he filed a brief.  Consequently, we consider this case on the record and Adeola's brief only.  See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (reviewing courts may address the merits of a case on one party's brief only "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief").

¶ 18    We must first discuss the state of the record on appeal.  There is no transcript (or acceptable substitute) for the hearing on March 18, 2024, nor any other hearing date.  Illinois Supreme Court

Rules 321 and 324 require an appellant to provide a complete record on appeal, including a certified copy of the report of proceedings. See Ill. S. Ct. Rs. 321 (eff. Oct. 1, 2021), 324 (eff. July 1, 2017). If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided for in Rule 323. See Ill. S. Ct. R. 323 (eff. July 1, 2017). Supreme court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. Moreover, it is a deep-rooted principle that a litigant appearing in this court *pro se* must follow the same rules as a litigant represented by counsel. *In re Marriage of Winters*, 160 Ill. App. 3d 277, 281 (1987) (citing *Biggs v. Spader*, 411 Ill. 42 (1951)). The burden of providing a sufficient record on appeal rests with the appellant (here, Adeola). *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Id.* at 392. Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.* This is particularly true "when the judgment order states that the court is fully advised in the premises." *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (1988).

¶ 19 With respect to her brief, Adeola raises three issues, but her "argument" section contains only two points. In addition, although her *pro se* notice of appeal solely challenges the trial court's order dated March 18, 2024, the heading of her first argument appears to challenge the trial court's entry of a "default judgment" against her, denying her "constitutional right to due process and fair hearing." The heading provides this court with no direction as to her precise contention of error because the court's March 2024 order did not enter a default judgment against her; instead, it denied both her petition for a rule to show cause and her motion to continue, and it granted Rotimi's motion for attorney fees pursuant to Rule 137 and section 508(b).

¶ 20    The text of her arguments fare no better.  First, they lack any citation to relevant legal authority and the two citations to the record on appeal (in only her first argument) merely refer to her motion seeking a continuance of the hearing on March 18, 2024, and the trial court's order of December 14, 2023 (which, *inter alia*, set the matter for a hearing on March 18, 2024).  She cites a federal rule of civil procedure, which has no relevance here.  Her sole case citation in her first argument, *Mohammad v. Dabbah*, 2017 IL App (1st) 160973-U,[1] provides no support for her bald assertion that Rotimi's purported failure to serve her with certain documents that he had delivered to the trial court amounts to an *ex parte* communication or a violation of due process.  This constitutes a further violation of Rule 341.  See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (appellant's argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on.").  Arguments presented without citation to relevant authority are forfeited.  *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 465 (2007).  On this basis alone, we can affirm the decision of the trial court.

¶ 21    As to her second argument, Adeola makes multiple accusations against the trial court, none of which are supported by any citation to the record on appeal.  Her bare citations to Rules 2.3(E) and 2.6(A) of the Illinois Code of Judicial Conduct of 2023 (Ill. Code Jud. Conduct Rs. 2.3(E), 2.6(A) (eff. Jan. 1, 2023)) are similarly undeveloped and conclusory.  Although she asserts that the court "declined her severe medical conditions and disregarded her medical letter from her surgeon," there is no transcript of that hearing to substantiate her claims on appeal.  By contrast, the court's order does not indicate that Adeola had claimed a medical excuse for refusing to proceed and states that Adeola was provided the opportunity to argue but she only stated she was not ready and later abruptly left the Zoom hearing when the court dismissed her petition.  Since

---

[1]  We set aside the fact that this 2017 decision was improperly cited pursuant to Illinois Supreme Court Rule 23(e).  See Ill. S. Ct. R. 23(e) (eff. June 3, 2025).

Adeola has failed to provide this court with a sufficient record on appeal, we must presume the court acted in conformity with the law and with a sufficient factual basis for its findings and resolve any doubts arising from this incomplete record against the appellant (*i.e.*, Adeola). See *Foutch*, 99 Ill. 2d at 392. We are therefore compelled to reject her claim of error. See, *e.g.*, *In re Marriage of Grauer*, 153 Ill. App. 3d 125, 130 (1987) ("This court cannot and will not decide in favor of Respondent[-Appellant] on the alleged abuse of discretion in the absence of his showing in the record facts that would support such a conclusion."). We thus reject her claims.

¶ 22    As noted, Adeola provides no coherent argument regarding either the proper standard of review nor any legal authority supporting her accusations. A reviewing court is not merely "a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). Since we are unable to discern either the factual or legal grounds supporting her claims, we must reject contentions of error. Adeola has provided this court with no basis for us to disturb any order that the trial court issued in this matter, and the absence of a complete record on appeal as well as her multiple briefing errors further compel us to reject her claims of error. Accordingly, we affirm the judgment of the trial court.

¶ 23                              CONCLUSION

¶ 24    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 25    Affirmed.